IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SAMUEL CADARETTE                                                                    PLAINTIFF

V.                                       NO. 13-5228

CAROLYN W. COLVIN,
Acting Commissioner for the Social Security Administration            DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Samuel Cadarette, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed his current applications for DIB and SSI on November 20, 2009, alleging an inability to work since September 16, 2009, due to passing out without warning, mood swings, and abnormal behavior. (Tr. 147-148, 165-157, 183, 187). Administrative hearings were held on September 2, 2011, and April 23, 2012, at which Plaintiff testified and was represented by counsel. (Tr. 31-43, 44-52).

By written decision dated June 15, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - history of

syncope, anxiety disorder not otherwise specified, and personality disorder not otherwise specified. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a work at all exertional levels but with the following nonexertional limitations: the claimant needs to avoid hazards such as heights or open machinery. The claimant is limited to doing simple repetitive tasks and having no more than incidental contact with the public.

(Tr. 18). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform such jobs as hand packager and candy spreader. (Tr. 51).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 9, 2013. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from

doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in giving Dr. Terry Efird's and Dr. Cheryl Woodson-Johnson's opinions more weight than Dr. Richard Back's; 2) The ALJ erred in finding Plaintiff's impairment did not meet Listing 12.03; 3) The ALJ erred in not finding Plaintiff's Schizophrenia, Depression, PTSD and Obesity to be severe impairments; and 4) The ALJ erred in discounting Plaintiff's subjective complaints. (Doc. 11).

#### A. The ALJ's Findings of Severe Impairments:

Plaintiff argues that he has schizophrenia, depression, obesity and PTSD that are severe impairments. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

The Court first notes that Plaintiff did not allege schizophrenia, depression, obesity or PTSD in his disability application documents (Tr. 187), which is significant. Dunahoo v. Apfel,

-4-

241 F.3d 1033, 1039 (8th Cir. 2001). In addition, Plaintiff was not diagnosed with schizophrenia until he was examined by Rachel Couey, MS, LPC, of Creoks Behavioral Health Services on March 15, 2011. (Tr. 617, 635). Plaintiff was seen several times thereafter at Perspectives Behavioral Health Management, LLC, by Peter J. Duncan, LPC/LMFT. (Tr. 780, 832, 852, 854, 857)**.** After those visits, on October 2, 2011, Dr. Terry Efird, an acceptable medical source, thereafter diagnosed Plaintiff with malingering and personality disorder NOS, not schizophrenia. Nor did Dr. Efird diagnose Plaintiff with schizophrenia at his previous evaluation in 2010.

Finally, none of the acceptable medical sources diagnosed Plaintiff with PTSD, and there is nothing in the record to indicate that Plaintiff's obesity had an impact on Plaintiff's ability to function in the workplace.

Based upon the foregoing, the Court is of the opinion that the medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on Plaintiff's ability to work, and that there is substantial evidence to support the ALJ's decision relating to Plaintiff's severe impairments.

### B.     **Weight Given to Physicians:**

Plaintiff argues that the ALJ should have given more weight to the Mental Diagnostic Evaluation of Richard D. Back, Ph.D., dated October 24, 2011 (Tr. 821-828), rather than to the evaluations performed by Terry Efird, Ph.D., on May 20, 2010 (Tr. 534-538), and October 2, 2011 (814-817), and the Mental RFC Assessment and Psychiatric Review Technique, completed by non-examining consultant, Cheryl Woodson-Johnson, Psy.D., on May 26, 2010. (Tr. 556-558, 542-554).

In his decision, the ALJ gave little weight to Dr. Back's opinion for various reasons. One

was because Dr. Back examined Plaintiff one time. (Tr. 21). Another was because Dr. Back was hired by Plaintiff's attorney. (Tr. 21). The ALJ also found Dr. Back's opinion that Plaintiff was markedly impaired in several areas to be inconsistent with other evidence in the record. For example, the ALJ noted that Dr. Back opined that Plaintiff's mental impairments markedly interfered with his day to day adaptive functioning based on the fact that Plaintiff did not drive, rarely showered, infrequently changed clothes, and did not perform daily activities spontaneously. However, the ALJ further noted that this was inconsistent with other evidence in the record which showed that Plaintiff was independent in performing personal care, independent in performing household chores, and even providing care during the day for two young children while his wife worked, with his mother there as a precaution in case he fainted. (Tr. 21).

In his decision, the ALJ gave great weight to the opinions of Dr. Woodson-Johnson and Dr. Efird. (Tr. 22). He noted that Dr. Efird had the opportunity to examine Plaintiff on two occasions, and performed psychological testing. In his first evaluation dated May 20, 2010, Dr. Efird noted that Plaintiff continued to enjoy activities, but did become bored fairly easily. (Tr. 534). Dr. Efird reported that financial obstacles to treatment were reported, and that Plaintiff's ability to perform household chores adequately was endorsed, as long as he was asked to perform those types of tasks. (Tr. 535). Plaintiff advised Dr. Efird that he used alcohol "on occasion" or "about twice a year," and denied the use of illegal substances. (Tr. 535). Plaintiff did report a history of having abused methamphetamine, opium, and marijuana when younger, but denied having smoked marijuana in months. (Tr. 535-536). Dr. Efird reported that the frequency of Plaintiff's mood fluctuations (several times a day) was "probably more consistent

with cluster B types of personality traits than a cyclical mood disorder." (Tr. 537). Dr. Efird also offered a diagnosis of anxiety disorder NOS. (Tr. 537). Dr. Efird found that Plaintiff did not present information clearly consistent with a psychotic disorder, and gave the following diagnosis:

> Axis I:            Anxiety disorder NOS
> Axis II:           Personality disorder NOS (cluster B traits), primary diagnosis
> Axis V:            50-60

(Tr. 537). Dr. Efird concluded that Plaintiff communicated and interacted in a reasonably socially adequate manner; that he had the capacity to perform basic cognitive tasks required for basic work like activities; that Plaintiff appeared able to track and respond adequately for the purposes of the evaluation; that Plaintiff generally completed most tasks during the evaluation; and that Plaintiff completed most tasks within an adequate time frame. (Tr. 538).

On May 26, 2010, having Dr. Efird's evaluation before her, non-examining consultant, Dr. Woodson-Johnson, found that Plaintiff was moderately limited in seven categories and not significantly limited in thirteen categories. (Tr. 558). She found Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, with few variables, little judgment; and where supervision required was simple, direct and concrete (unskilled). (Tr. 558).

Dr. Efird evaluated Plaintiff again on October 2, 2011. (Tr. 814-817). At that evaluation, Plaintiff advised Dr. Efird that he had been diagnosed "twice with schizophrenia." (Tr. 814). Plaintiff told Dr. Efird he took depression medicine, and Dr. Efird reported that Plaintiff "endorsed far more infrequently endorsed items than is generally found with a psychotic diagnosis. This type of response style is often referred to as a 'faking bad.'" (Tr. 815). Dr. Efird

-7-

noted that this type of finding is often noted in cases of malingering, where a person portrays themselves as quite disturbed. (Tr. 815). Dr. Efird offered a diagnosis of malingering. Dr. Efird noted that Plaintiff was prescribed Zyprexa, Klonopin, and Celexa through Perspectives Behavioral Health Management, LLC, and that medications were reportedly taken as prescribed. Plaintiff described the medication as having been somewhat beneficial, although Plaintiff disclosed having thoughts of "murdering people." (Tr. 815). Plaintiff described his use of alcohol as social, and denied use of illegal substances. (Tr. 816). Dr. Efird found that Plaintiff reported a wide range of severe psychiatric problems, and that based upon the records reviewed, he had received a variety of diagnoses. (Tr. 817). He further found that the MMPI - 2 profile was most consistent with what is considered a fake-bad profile in which a person attempts to present themselves. Dr. Efird diagnosed Plaintiff as follows:

>  Axis I:     malingering
>  Axis II:    personality disorder NOS
>  Axis V:     45-55

(Tr. 817). Dr. Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner; communicated in a reasonably intelligible and effective manner; had the capacity to perform basic cognitive tasks required for basic work like activities; appeared able to track and respond adequately for the purpose of the evaluation; generally completed most tasks during the evaluation; and completed most tasks within an adequate time frame. (Tr. 817). Dr. Efird also found that malingering would be diagnosed, which was indicated in the response style noted on the MMPI-2; and the claimant presented some visual hallucinations which appeared atypical for classic schizophrenia. (Tr. 817).

"A treating source's opinion is to be given controlling weight where it is supported by

acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir.2003), paraphrasing 20 C.F.R. § 404.1527(d)(2). When a treating source's opinion is not controlling, it is weighed by the same factors as any other medical opinion: the examining relationship, the treatment relationship, supporting explanations, consistency, specialization, and other factors. See 20 C.F.R. § 404.1527(d); Lehnartz v. Barnhart, 142 Fed. Appx. 939, 940 (8th Cir. 2005). Dr. Back only saw Plaintiff one time and is not a "treating physician." His opinion is therefore weighed by the treatment relationship, supporting explanations, consistency, specialization, and other factors.

The ALJ noted that Dr. Back's opinion was inconsistent with other evidence in the record, which showed that Plaintiff was "independent in performing personal care, independent in performing household chores, and even providing care during the day for two young children while his wife works with his mother there as a precaution in case he faints." (Tr. 21). The ALJ also found that Dr. Back's opinion seemed to "disregard evidence in the record where the claimant reports: playing video games with his friend, having a 5 year long marriage, enjoying spending time with his children, recommencing a relationship with an old high school friend when he and his wife separated, reconciling with his wife following a separation, and spending time with his neighbors. (Tr. 21). The ALJ also noted that Plaintiff answered almost all the cognitive questions accurately and performed all math problems adequately. (Tr. 21). On the other hand, the ALJ noted that Dr. Efird saw Plaintiff twice, performed psychological testing, and found his opinion, as well as Dr. Woodson-Johnson's opinion, consistent with the record.

Based upon the foregoing, the Court finds that there is substantial evidence to support

AO72A
(Rev. 8/82)

the weight the ALJ gave to the physician's opinions.

### C. Whether Plaintiff's impairment met Listing 12.03:

Plaintiff argues that when Dr. Back's assessment is given the great weight it deserves, it becomes clear that Plaintiff meets Listing 12.03. The Court has already determined above that the ALJ gave the opinion of Dr. Back appropriate weight. Thus, Plaintiff's argument on this issue is without merit.

### D. Credibility Analysis:

Plaintiff argues that the ALJ erred in discounting Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC. (Tr. 20). The ALJ then referred to the instances which support his position. For example, the ALJ noted that although Plaintiff reported to Dr. Efird that

he had anxiety being around people and reported a history of social isolation, he also reported that he spent time on Facebook, lived with his mother and adult brother, had been married for 5 years, and had two young children. (Tr. 20). The ALJ also noted that Plaintiff was apparently successful in starting a new relationship with a high school friend and later got back together with his wife following a separation. (Tr. 20). The ALJ also pointed out that Plaintiff's statements regarding his history of drug use were not consistent, and noted examples of such inconsistency. (Tr. 21). In addition, the ALJ considered Plaintiff's work record, which showed that Plaintiff worked only sporadically prior to the alleged disability onset date, which raised the question as to whether Plaintiff's continuing unemployment was actually due to his impairments. (Tr. 21).

The Court finds, based upon the foregoing, as well as those reasons given in Defendant's brief, that there is substantial evidence to support the ALJ's credibility findings.

**IV.   Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this 5th day of January, 2015.

*/s/ Erin L. Setter*
HONORABLE ERIN L. SETTER
UNITED STATES MAGISTRATE JUDGE